# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAIN MARTIN COVARRUBIAS,<br><br>    Petitioner,<br><br>    v.<br><br>SEAN MOORE,<br><br>    Respondent. | Case No. 1:22-cv-0446-AWI-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Nain Martin Covarrubias is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts he was denied due process by the trial court's admittance of evidence of previous assaultive conduct and that his sentence constitutes cruel and unusual punishment. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On February 2, 2018, Petitioner was convicted by a jury in the Merced County Superior Court of attempted murder (count 1) and assault with a firearm (count 2). (CT[1] 193, 195.) The jury found true the special allegations regarding Petitioner's personal use of a firearm during the commission of the offense, that the offense was committed for the benefit of, at the direction of,

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent. (ECF No. 11.)

or in association with a criminal street gang, and that Petitioner personally inflicted great bodily injury upon the victim. (CT 193–196.) Petitioner was sentenced to a determinate imprisonment term of thirty-four years[2] plus a consecutive indeterminate term of twenty-five years to life for the firearm enhancement. Petitioner's sentence for count 2 was stayed. (CT 249–252.)

On September 14, 2020, the California Court of Appeal, Fifth Appellate District vacated Petitioner's sentence and remanded the matter for resentencing, directing the trial court to strike the gang and prior prison term enhancements and to exercise its discretion to determine whether to impose the five-year enhancement for a prior serious felony conviction. People v. Covarrubias, No. F077157, 2020 WL 5511848, at *13 (Cal. Ct. App. Sept. 14, 2020). In all other respects, the judgment was affirmed. Id. On November 24, 2020, the California Supreme Court denied Petitioner's petition for review. (LD[3] 17.) On December 29, 2020, Petitioner was resentenced to a term of eighteen years plus twenty-five years to life. (LD 15.)

In the instant petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) the trial court denied Petitioner due process pursuant to the Fourteenth Amendment by admitting evidence of previous assaultive conduct; and (2) Petitioner's sentence is cruel and unusual punishment, in violation of the Eighth Amendment. (ECF No. 1 at 15.)[4] Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 12, 15.)

## II.

## STATEMENT OF FACTS[5]

**I. Appellant Is A Gang Member.**

> It is undisputed that appellant was a gang member when this shooting occurred. The prosecution's gang expert had supervised appellant while he was on parole. Based on various factors, including his prior contacts with appellant and appellant's tattoos, the expert opined at trial that appellant was a gang member with Los Primos, a subset of the Sureño gang.

---

[2] "This consisted of an upper term of nine years for the attempted murder, doubled because of a prior strike conviction. The gang enhancement added 10 years, a prior serious felony conviction added five years, and a prior prison term enhancement added one year." People v. Covarrubias, No. F077157, 2020 WL 5511848, at *1 (Cal. Ct. App. Sept. 14, 2020) (citations omitted).
[3] "LD" refers to the documents lodged by Respondent. (ECF No. 11.)
[4] Page numbers refer to the ECF page numbers stamped at the top of the page.
[5] The Court relies on the California Court of Appeal's September 14, 2020 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

**II. This Shooting Occurred in Sureño Gang Territory.**

This shooting occurred in a mobilehome park where the victim lived. This park was territory for members of the Sureño gang. Certain graffiti in the mobilehome park had suggested that Sureño gang members had intended to kill a rival Norteño gang member.

The victim was not involved in gangs, and he had no gang tattoos. However, after he moved into the park, the victim and his family were harassed by Sureños, who seemed to believe that he was a rival Norteño gang member.[6] At times, the victim was threatened with violence by Sureños.

Appellant spent time in this mobilehome park with a female who lived there. The victim testified at trial that appellant had never spoken to him before this shooting. The victim denied that appellant had ever harassed him. The park manager testified that she was not certain whether appellant had participated in any of the previous harassment involving the victim of this shooting. She confirmed, however, that she had never seen appellant doing any of the gang-related graffiti in the park.

**III. The Attempted Murder.**

The shooting occurred just after midnight on March 29, 2012. The victim heard a knock on his door. He asked who was there, but no one answered. When he asked again, he heard someone ask for "Jose." The victim had a younger brother with that name so he opened the door. Without warning, the victim heard two bangs. In "a daze" he realized he had been shot. The victim's family found the victim on the floor, and they called for assistance.

The victim suffered a bullet wound to his face near his upper lip. He was also shot in the upper shoulder area. Emergency personnel responded to the scene.

**IV. The Victim Identifies Appellant As The Shooter.**

The victim told police that his shooter was a Hispanic male, about five feet 11 inches tall, with a bald head. The shooter had a large tattoo that extended from his chin to the bottom of his neck.[7] The victim suspected that the shooter was a Sureño gang member. The victim had seen the shooter before in the mobilehome park.

About three weeks after this shooting, law enforcement showed the victim a photographic lineup. None of these photos showed appellant. The victim did not identify any of these suspects as the shooter. A few weeks later, the victim was shown a new photographic lineup of six suspects, which included appellant. All of these suspects had neck tattoos. The victim selected appellant's photograph and stated, "This is the person that shot me."

At trial the victim identified appellant as the person who had shot him. He told the jury that he had a good look at the shooter's face before he was shot. He had recognized him from someone who spent time at the mobilehome park.

---

[6] The jury learned that the victim's hairstyle was one reason why he may have been targeted as a rival Norteño gang member. The victim had worn his hair "longer" and "with braids." A Norteño gang member in that area often wore longer hair. In contrast, Sureño gang members in the area typically shaved their heads.

[7] The victim's description matches a photograph of appellant.

**V. Appellant's Prior Criminal Conduct.**

The jury learned that, in 2004, appellant had participated with others in threatening someone with a firearm. This incident had occurred at the same mobilehome park where the present shooting took place.[8] Like the victim in the present shooting, the 2004 victim had not been involved in gang activity. Prior to threatening that prior victim with a firearm, appellant and other "Southerners" had harassed that victim in the mobilehome park.

Shortly after appellant (along with others) had threatened this prior victim with a firearm, law enforcement stopped a vehicle that matched a description of the suspects' vehicle. Appellant and other males were taken into custody. When stopped by police, appellant uttered a gang slur and he flashed a gang sign. Gang-related items were found in the vehicle, and additional gang-related items were later recovered at appellant's residence. Appellant admitted to an officer that he and the other males in the vehicle were Sureños.

**VI. The Defense Case.**

The defense presented an expert who testified about the unreliability of eyewitness identifications, and the factors that can taint memories. During closing argument, the defense noted that no physical evidence connected appellant to this shooting. The defense asserted, in part, that the victim's identification was false regarding the identity of his shooter. The defense also argued that the law enforcement investigation had been flawed.

Covarrubias, 2020 WL 5511848, at *1–3 (footnotes in original).

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Merced County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

---

[8] Stemming from this incident, appellant received a felony conviction in 2005 for making a criminal threat (§ 422, subd. (a)), along with a gang enhancement (§ 186.22, subd. (b)(1)).

4

Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we

can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Admitting Evidence of Previous Assaultive Conduct

In his first claim for relief, Petitioner asserts that the trial court violated his Fourteenth Amendment due process rights by admitting evidence of previous assaultive conduct, which was overly prejudicial despite the trial court's limiting instruction to the jury. (ECF No. 1 at 16–21.) Respondent argues that this claim was adjudicated on the merits, relief is barred by the absence of clearly established Supreme Court law, and the claim nevertheless fails on *de novo* review because Petitioner fails to demonstrate that admitting the evidence rendered his trial fundamentally unfair. (ECF No. 12 at 17–28.)

Petitioner's due process claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which in its reasoned decision only expressly addressed whether the trial court's decision to admit the evidence was an abuse of discretion under state law. See Covarrubias, 2020 WL 5511848, at *7–10. The due process claim was also raised in Petitioner's petition for review in the California Supreme Court, which summarily denied the petition. (LDs 16, 17.) "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits . . . ." Johnson v. Williams, 568 U.S. 289, 301 (2013); Kipp v. Davis, 971 F.3d 939, 951 (9th Cir. 2020) (applying AEDPA to petitioner's due process claim "[g]iven the overlapping nature of [petitioner]'s due process and evidentiary claims"[9] and the "improbab[ility] that the state court

---

[9] The Court notes that Kipp involved California Evidence Code section 1101(b), which is the state evidentiary rule at issue in the instant petition. See Kipp, 971 F.3d at 951; Covarrubias, 2020 WL 5511848, at *8.

7

simply neglected the federal issue and failed to adjudicate the constitutional claim" (quotation marks and citation omitted)). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct. at 1192; Williams, 568 U.S. at 297 n.1.[10]

In denying Petitioner's claim that the trial court erred in admitting evidence of previous assaultive conduct, the California Court of Appeal stated:

> **V. The Trial Court Did Not Abuse Its Discretion In Permitting Introduction Of Evidence Regarding Appellant's Prior Criminal Conduct.**
>
> Appellant asserts that the trial court erred in permitting the prosecution to introduce evidence regarding his prior criminal conduct in 2004. He contends that this evidentiary ruling was prejudicial and deprived him of due process. He seeks reversal of his conviction.
>
> **A. Standard of review.**
>
> We review relevancy and Evidence Code section 352 rulings involving gang evidence for abuse of discretion. (*People v. Montes* (2014) 58 Cal.4th 809, 859–860; *People v. Clair* (1992) 2 Cal.4th 629, 660.) A trial court abuses its discretion when its ruling is outside the bounds of reason. (*People v. Waidla* (2000) 22 Cal.4th 690, 714.) We will not disturb a court's decision on appeal unless it exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.)
>
> **B. Appellant's prior criminal conduct.**
>
> The jury heard evidence about a 2004 incident involving appellant, wherein he and others (including his brother) had threatened someone with a firearm. This incident had occurred at the same mobilehome park where the present shooting took place. We summarize the court's ruling, the instructions provided to the jury about this issue, and the relevant testimony about this prior incident.
>
> **1. The trial court's ruling.**
>
> Prior to trial, the prosecutor asserted that evidence about appellant's 2004 criminal conduct was relevant to show his gang motive to commit the shooting charged in this matter. The prosecutor also argued that this prior incident showed appellant's connection to the mobilehome park where the present shooting had occurred.

---

[10] In Williams, the habeas petitioner argued that a juror's dismissal violated both the Sixth Amendment and the California Penal Code. 568 U.S. at 295. The California Court of Appeal issued a reasoned decision regarding the juror's dismissal but "did not expressly acknowledge that Williams had invoked a federal basis for her argument." Id. at 296. The California Supreme Court denied the petition for review in a one-sentence order. Id. The Supreme Court held that the Ninth Circuit properly "'look[ed] through' the California Supreme Court's summary denial of Williams' petition for review and examined the California Court of Appeal's opinion, the last reasoned state-court decision to address Juror 6's dismissal." Id. at 297 n.1.

The court determined that appellant's prior conduct was relevant to show his motive to protect a gang territory or in "addressing suspected rivals." The court, however, had concerns about the passage of time from the prior 2004 incident to the present charges. The court allayed those concerns, noting that appellant had been in prison for the "bulk" of that time. The court believed the jury would not "rubber stamp" appellant's guilt in the current charges based on this prior incident.

The court later revisited this issue. The court noted that the prior incident was relevant to establish appellant's motive to protect the gang territory at the mobilehome park. The court concluded that the central issue at trial was the identity of the victim's shooter. The court did not believe that the jury would be confused by admission of the prior incident because identity was the "whole issue of this case." The court also felt that the prior incident was "far less inflammatory than the current crime." The court ruled that it would allow testimony about the prior incident under Evidence Code section 1101, subdivision (b).[11]

### 2. The court's initial admonishment to the jury.

Just prior to the introduction of testimony about this prior incident, the court admonished the jury that this evidence could be used only for a very limited purpose. The court stated that this testimony would involve "additional evidence regarding gang activity, and you're reminded that this evidence of gang activity cannot be used to show that [appellant] is a person of bad character or that he is a person who has a propensity to commit the crime ... of shooting [the victim]." The court reminded the jurors that the identity of appellant as the shooter in the charged attempted murder was the first issue to decide. The court stated that this evidence dealt with the gang allegations, which the jurors should not decide unless the evidence established beyond a reasonable doubt that appellant was the shooter in the charged attempted murder. The court concluded its comments again noting that "this evidence cannot be used to show [that appellant] had a propensity to commit the crime or that he is a person of bad character."

### 3. The testimony about this prior incident.

The victim from that prior incident, J.O., testified at trial that he had lived in the same mobilehome park in 2004 where the present shooting had taken place. According to J.O., two brothers had pulled a gun on him in 2004 at the mobilehome park. A police officer responded and he stopped a vehicle that matched a description provided by dispatch. Appellant was inside that vehicle, along with his brother and two other men.

When one of the passengers (not appellant) exited the vehicle, a firearm fell onto the ground. That was recovered, along with a second firearm found inside the vehicle. Both firearms were loaded. The officer found gang-related items inside the vehicle. "Sur 13" was written on a CD case and on the butt of one of the recovered firearms. In addition, some blue bandanas, and a blue belt with the word "Primos" on it, were recovered from inside the vehicle. When appellant got

---

[11] Under Evidence Code section 1101, subdivision (a), evidence of a person's character (or a trait) is inadmissible to prove his or her conduct on a specific occasion. However, under Evidence Code section 1101, subdivision (b), evidence that a person committed a crime is admissible to prove some other fact, such as motive, opportunity or intent, among other listed factors.

9

out of the vehicle, he said, "Fuck you. Sur Trece."[12] He also displayed a gang sign. Appellant admitted to the officer that the suspects in this vehicle were Sureños. After the stop, an officer went to appellant's residence, where additional gang-related items were recovered. One item was a "pledge of allegiance" to the Sureño gang. The pledge expressed hatred for Norteños, and it encouraged killing them.

### 4. The relevant jury instruction.

During formal jury instructions, the court informed the jury that the prosecution had presented evidence that appellant had committed a criminal threat under section 422, and that crime was committed for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1). The jurors were told to consider this evidence only if the prosecution had proved beyond a reasonable doubt that appellant had in fact committed the offense. The jurors were informed that the prior incident was not sufficient by itself to prove that appellant was guilty of attempted murder and/or assault with a firearm. The jurors were told not to conclude from the prior incident that appellant has a bad character or is disposed to commit crime.

### C. Analysis

Appellant argues that the court's evidentiary ruling was in error. He contends that the facts from the prior incident were "too similar" to the shooting charged in this matter. He asserts that, notwithstanding the limiting instructions, the jury likely used the 2004 incident as propensity evidence, leading to his conviction.

We disagree that the court abused its discretion in permitting admission of this evidence. In general, the prosecution is entitled to introduce evidence of gang affiliation and activity when such evidence is relevant to prove some fact other than the defendant's disposition to commit the charged crime. (*People v. Valdez* (2012) 55 Cal.4th 82, 131; *People v. McKinnon* (2011) 52 Cal.4th 610, 655.) Gang evidence is admissible to prove motive or identity as long as the prejudicial effect does not outweigh its probative value. (*People v. Williams* (1997) 16 Cal.4th 153, 193.)

Our Supreme Court has cautioned that trial courts should "carefully scrutinize" gang evidence, even where gang membership is relevant, because it may have a highly inflammatory impact on the jury. (*People v. Williams*, *supra*, 16 Cal.4th at p. 193.) However, wide latitude is permitted in admitting evidence of motive because a motive is ordinarily the incentive for criminal behavior. (*People v. McKinnon*, *supra*, 52 Cal.4th at p. 655.) "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)

In this matter, appellant's prior criminal conduct occurred at the same mobilehome park where this present shooting took place. Like the present matter, the victim in the prior incident was a suspected rival gang member. Those similarities made appellant's prior conduct material in this trial because it strongly suggested a gang-related motive for him to commit the charged attempted

---

[12] At trial, the officer told the jury that he speaks Spanish. He stated that "Sur" means "south. 'Trece' is the word for the number 13." With another witness, the jury learned that the number 13 is reference to the Mexican Mafia and the Sureño gang.

10

murder.[13] Thus, we agree with the trial court that evidence about this prior incident was relevant. (See Evid. Code, § 210.)

The court repeatedly advised the jury that the issue in this trial was the identity of the victim's shooter. The court admonished the jury that appellant's prior criminal conduct could not be used to establish his guilt. Instead, before considering the gang allegations, the jury had to first determine beyond a reasonable doubt that appellant was the shooter charged in this matter.

Although appellant's prior criminal conduct involved threatening a victim with a firearm, that prior incident was very different from the attempted murder charged in this case. Appellant's behavior during the 2004 incident was far less egregious and shocking than the apparently unprovoked and senseless shooting that occurred in this matter. As such, it does not appear reasonably likely that the jury would have been confused or misled by the admission of this evidence as they considered whether or not appellant was guilty of attempted murder. Instead, as the court repeatedly pointed out, the real issue at trial was the identity of the shooter, and the victim provided overwhelming testimony establishing it was appellant who shot him.

Finally, it does not appear that this evidence necessitated an undue consumption of time. In addition, the court was correct that, although the 2004 incident was relatively old, appellant had spent a majority of that time in prison, and he had been out of prison for less than a year when he shot the victim in this matter. Consequently, we agree with the court that evidence about appellant's prior criminal conduct was not more prejudicial than probative. (See Evid. Code, § 352.)

Based on this record, the trial court's evidentiary ruling was not outside the bounds of reason. (See *People v. Waidla*, *supra*, 22 Cal.4th at p. 714.) The court did not exercise its discretion in an arbitrary, capricious or patently absurd manner. (See *People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124–1125.) Thus, an abuse of discretion is not present. Consequently, appellant's arguments are without merit, and this claim fails.[14]

Covarrubias, 2020 WL 5511848, at *7–10 (footnotes in original).

Petitioner asserts that the denial of his due process claim was based upon only an unreasonable application of the facts presented in the trial court,[15] arguing that "the jury could not have made a permissible inference upon receiving the prior act evidence." (ECF No. 15-1 at 2.)

---

[13] As we discussed earlier in this opinion, although appellant's prior criminal conduct provided an inference of a possible gang-related motive for this shooting, no other evidence demonstrated beyond a reasonable doubt that appellant actually committed this attempted murder to benefit his gang (§ 186.22, subd. (b)(1)).

[14] Because the court did not abuse its discretion, we do not address appellant's arguments regarding prejudice.

[15] As recognized by the Ninth Circuit, Petitioner cannot "argue for error under section 2254(d)(1) because there is no clearly established law that addresses whether the admission of a defendant's criminal history or prior bad acts would violate due process" and the "Supreme Court has expressly reserved the question of whether using evidence of a defendant's past crimes to show that he has a propensity for criminal activity could ever violate due process." Kipp, 971 F.3d at 952 (citing Alberni v. McDaniel, 458 F.3d 860, 864, 866 (9th Cir. 2006), and Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)).

> A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." In such cases, "we must rely on the jury to sort [the inferences] out in light of the court's instructions." Admission of evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw" from it.

Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), as amended on reh'g, 421 F.3d 1154 (9th Cir. 2005) (alterations in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)).

In the traverse, Petitioner states:

> Respondent asserts that the non-propensity, permissible inferences from the prior acts are that the 2004 incident "occurred at the same mobile home park where the present shooting occurred, and the victims in both cases were suspected rival gang members." *Ibid.* But the evidence that the charged shooting was gang related was so limited that the Court of Appeal reversed the gang enhancement allegation, finding it to be only supported by "speculation." ECF No. 11-14, Opinion at 12. Nor did the alleged acts placing petitioner at the trailer park approximately eight years prior to the shooting have any real bearing on petitioner's guilt or innocence. There was no evidence that the 2004 incident had any permissible, evidentiary connection with the 2012 shooting.

(ECF No. 15-1 at 3.)

Petitioner appears to argue that because the Court of Appeal reversed the jury's findings on gang enhancements for insufficient evidence, there were no permissible inferences to be drawn from the evidence regarding the 2004 incident. The Court finds Noel v. Lewis, 605 F. App'x 606 (9th Cir. 2015), instructive. In Noel, the habeas petitioner argued that "given the insufficiency of the evidence as a matter of law regarding his conviction for gang participation . . . and the trial judge's decision to set aside the jury's finding on the gang enhancements . . . his trial was fundamentally unfair and his due process rights were violated" by "the introduction of gang evidence." Id. at 608. In denying relief, the Ninth Circuit held that although the state court "set aside the jury's finding on the [gang] enhancement, that ruling, in and of itself, does not establish that there were no permissible inferences to be drawn from the gang evidence" and the petitioner's "due process rights to a fair trial were not violated by admission of the gang evidence, from which permissible inferences about [petitioner]'s motive could have been

1 drawn." Noel, 605 F. App'x at 609. Similarly, here, the fact that the state court found the 2004
2 incident was not sufficient to establish beyond a reasonable doubt that Petitioner committed the
3 crime for the benefit of, at the direction of, or in association with any criminal street gang and
4 had the specific intent to promote, further, or assist in any criminal conduct by gang members,
5 Covarrubias, 2020 WL 5511848, at *5, does not mean the evidence was not relevant to whether
6 there was a gang-related motive for the shooting or that no permissible inferences could be
7 drawn from the evidence.

8 Based on the foregoing, the state court's denial of Petitioner's due process claim was not
9 contrary to, or an unreasonable application of, clearly established federal law, nor was it based
10 on an unreasonable determination of fact. The decision was not "so lacking in justification that
11 there was an error well understood and comprehended in existing law beyond any possibility for
12 fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to
13 habeas relief on his first claim, and it should be denied.

14 **B.  Sentence as Cruel and Unusual Punishment**

15 In his second claim for relief, Petitioner asserts that his life-plus sentence is cruel and
16 unusual punishment in violation of the Eighth Amendment. (ECF No. 1 at 21–23.) Respondent
17 argues that Petitioner's claim is unexhausted or, alternatively, that it is technically exhausted but
18 procedurally defaulted, and fails on its merits. (ECF No. 12 at 29–35.)

19 Ordinarily procedural bar issues are resolved first, but courts have recognized that
20 "[p]rocedural bar issues are not infrequently more complex than the merits issues . . . so it may
21 well make sense in some instances to proceed to the merits if the result will be the same."
22 Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S.
23 518, 525 (1997)). Accordingly, the Court will proceed to review the claim *de novo*. See Berghuis
24 v. Thompkins, 560 U.S. 370, 390 (2010) ("[W]e need not determine whether AEDPA's
25 deferential standard of review, 28 U.S.C. § 2254(d), applies" if a petitioner "cannot show
26 prejudice under *de novo* review, the more favorable standard of review for [the petitioner.]").

27 Petitioner was initially sentenced in the trial court to a determinate term of thirty-four
28 years plus an indeterminate term of twenty-five years to life. (CT 249–252.) In determining

Petitioner's sentence, the trial court considered aggravating or mitigating factors:

> As far as factors in aggravation and mitigation, the Court finds that this time involved violence, great bodily harm, and the defendant was armed, using a firearm at the time it was committed.
>
> The victim was particularly vulnerable. He was answering a front door and was shot in the face. The crime indicates that it was carried out with some degree of planning.
>
> With respect to the defendant's personal history, he's engaged in violent conduct indicating a serious danger to society. He has prior convictions which are serious and increasing -- which are of increasing seriousness. He's served a prior prison term. He was on probation or parole when this crime was committed. And his prior performance on probation or parole was unsatisfactory.
>
> I can't find any circumstances in mitigation.

(ECF No. 11-8 at 159–160.) On remand, Petitioner was resentenced to a determinate term of eighteen years plus an indeterminate term of twenty-five years to life. (LD 15.)

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996–97 (1991) (Kennedy, J., concurring in part and concurring in judgment)). The Eighth Amendment "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." Graham v. Florida, 560 U.S. 48, 60 (2010) (quoting Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring)). The Supreme Court has advised that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." Ewing, 538 U.S. at 22 (quoting Hutto v. Davis, 454 U.S. 370, 374 (1982)).

In Rummel v. Estelle, the Supreme Court upheld the imposition under a Texas recidivist sentencing statute of a life sentence with the possibility of parole within twelve years for obtaining $120.75 by false pretenses. 445 U.S. 263, 266, 285 (1980). In Solem v. Helm, the Supreme Court found unconstitutional the imposition under a South Dakota recidivist sentencing statute of a life sentence without the possibility of parole for uttering a "no account" check for $100. 463 U.S. 277, 281–82, 284 (1983). In Harmelin v. Michigan, the Supreme Court upheld a

first-time offender's sentence of life without the possibility of parole for possessing 672 grams of cocaine. 501 U.S. 957, 961, 996 (1991). In Ewing v. California, the Supreme Court upheld the imposition under California's Three Strikes Law of a twenty-five-years-to-life sentence for felony grand theft of personal property in excess of $400. 538 U.S. at 30–31. In Lockyer v. Andrade, the Supreme Court upheld on federal habeas review a sentence of two consecutive terms of twenty-five years to life under California's Three Strikes Law for theft of $153.54 worth of videotapes. 538 U.S. at 66, 77.

Petitioner argues that even his reduced sentence is still longer than his natural life and is grossly disproportionate to the underlying crimes for which he was convicted. (ECF No. 1 at 23.) In Harmelin, the Supreme Court found the sentence of life without the possibility of parole for a first-time offender for a non-violent offense did not violate the Eighth Amendment. Here, Petitioner was found guilty of attempted murder with personal use of a firearm that resulted in great bodily harm and "he has a clear history of continuous criminal conduct, including repeated acts of violence." Covarrubias, 2020 WL 5511848, at *12. In light of the Supreme Court's precedent and being mindful that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare," Ewing, 538 U.S. at 22, the Court finds that Petitioner's sentence was not grossly disproportionate and thus does not constitute cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file

written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 7, 2023**    /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE